SO ORDERED.

Dated: November 26, 2019

Daniel P. Collins, Bankruptcy Judge
_____

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| **In re:** | Chapter 7 Proceedings |
| **AHMAD WALI MAILATYAR and EDYTA KAMILA MAILATYAR,** | Case No.: 2:17-bk-13538-DPC |
| **Debtors.** | Adversary No.: 2:18-ap-00259-DPC |
| **TIMOTHY R. WRIGHT,** | **UNDER ADVISEMENT RULING ON PLAINTIFF'S APPLICATION FOR AWARD OF ATTORNEYS' FEES** |
| **Plaintiff,** | |
| v. | [NOT FOR PUBLICATION] |
| **AHMAD WALI MAILATYAR and EDYTA KAMILA MAILATYAR,** | |
| **Defendants** | |

Before this Court are Plaintiff's, Timothy R. Wright's ("Plaintiff") Application for Award of Attorneys' Fees[1] ("Fee Application"), Defendants', Ahmad Wali Mailatyar and Edyta Kamila Mailatyar's ("Defendants") Response and Opposition to Plaintiff's Application for Award of Attorney's Fees and Costs[2] ("Response"), Plaintiff's Reply in Support of Wright's Application for Award of Attorneys' Fees[3] ("Reply"), Defendants' Second Response and Opposition to Plaintiff's Reply in Support of Wright's Application for Award of Attorney's Fees[4] ("Second Response"), Plaintiff's Revised Fee Exhibits in Support of Wright's Application for Award of

---

[1] DE 48. Unless indicated otherwise, "DE" references a docket entry in this adversary proceeding 2:18-ap-00259-DPC (the "Adversary Proceeding").
[2] DE 50.
[3] DE 55.
[4] DE 56.

Attorneys' Fees[5] ("Fee Exhibits") and Defendants' Response and Objection to Plaintiff's Revised Fee Exhibits in Support of Application for Award of Attorneys' Fees[6] ("Defendants' Objection").

After reviewing the parties' briefs and hearing oral argument on the issue, this Court finds that Plaintiff is entitled to an award of $124,605.11 for fees and costs incurred in connection with Defendants' bankruptcy.

## I. BACKGROUND

On November 14, 2017 ("Petition Date"), Defendants filed a Chapter 13 bankruptcy.[7] Plaintiff points out that Defendants' Petition Date was one day prior to Plaintiff's scheduled sheriff's sale of Debtors' rental property located at 11 E. Venado, New River, AZ. Within two months of the Petition Date Plaintiff filed an Objection to Chapter 13 Plan.[8] Plaintiff then filed an Objection to Debtors' Homestead Exemption[9] ("Objection to Homestead") and an Emergency Motion to Convert Chapter 13 Case to Chapter 7[10] ("Motion to Convert"). Defendants filed a Response to Objection to Debtors' Homestead Exemption[11] ("Response to Objection to Homestead") and a Response and Objection to Emergency Motion to Convert Debtors' Chapter 13 Case to Chapter 7[12] ("Objection to Motion to Convert").

After allowing the parties to provide additional briefing on the issue of Chapter 13 eligibility[13] and hearing oral argument on the matter, on March 30, 2018, this Court issued an Under Advisement Ruling Regarding Chapter 13 Eligibility determining that Defendants were not eligible for Chapter 13.[14] On the same day, Defendants filed a Motion to Convert Case to Chapter 11.[15] This Court granted the Motion to Convert Case on April 3, 2018.[16]

---

[5] DE 61.
[6] DE 62.
[7] DE 1 of administrative bankruptcy case 2:17-bk-13538-DPC.
[8] Administrative DE 26.
[9] Administrative DE 29.
[10] Administrative DE 30.
[11] Administrative DE 41.
[12] Administrative DE 44.
[13] Defendants filed a Brief on Chapter 13 Debt Limits Pursuant to 11 U.S.C. § 109(e) at Administrative DE 57 and Plaintiff filed a Brief Regarding Debtors' Eligibility Under 11 U.S.C. § 109(e) at Administrative DE 58.
[14] Administrative DE 87.
[15] Administrative DE 88.
[16] Administrative DE 93.

On July 6, 2018, this Court held an evidentiary hearing on Plaintiff's Objection to Homestead. After the parties were allowed to file additional briefs on the Defendants' homestead issue,[17] this Court issued an Under Advisement Ruling Regarding Debtors' Homestead Exemption sustaining Plaintiff's Objection to Homestead, noting that testimony provided by Defendants and their daughter was unreliable and lacking in credibility.[18]

On July 9, 2018, Plaintiff initiated this Adversary Proceeding seeking a denial of discharge under §§ 727(a)(2)(A),[19] (B), (a)(3) and (a)(4)(A).[20] Within this Adversary Proceeding, Defendants' original counsel withdrew,[21] Plaintiff filed a Motion for Summary Judgment,[22] Defendants' filed a *pro se* Statement of Undisputed Facts,[23] Plaintiff filed a Reply in Support of Motion for Summary Judgment,[24] Defendants' retained counsel for the limited purposes of making oral argument at the hearing on Plaintiff's Motion for Summary Judgment[25] and this Court granted Plaintiff's Motion for Summary Judgment as to his § 727(a)(3) cause of action.[26]

After this Court's Under Advisement Ruling Regarding Debtors' Homestead Exemption, Debtors' counsel withdrew in the administrative case of this bankruptcy proceeding.[27] On August 27, 2018, Plaintiff filed a Motion for Sanctions Relating to Debtors' Failure to Appear at Continued 2004 Exams.[28] Plaintiff then filed a Motion to Compel Production of Documents from Impact Advisor, Inc. and Impact Technology Recruiting, Inc.[29] Defendants filed a Response to Motion for Sanctions Relating to Debtors' Failure to Appear at Continued 2004 Exams.[30] On

---

[17] Defendants filed a Supplemental Brief Re: Issues Raised at Closing at Administrative DE 184 and Plaintiff filed a Supplemental Brief Regarding Ability to Impose an Equitable Lien Senior to Debtors' Homestead Exemption at Administrative DE 183. The Court also notes that it held a telephonic hearing on a discovery dispute related to the Objection to Homestead.
[18] Administrative DE 199.
[19] Unless indicated otherwise, statutory citations refer to the U.S. Bankruptcy Code ("Code"), 11 U.S.C. §§ 101 – 1532.
[20] DE 1.
[21] DE 9.
[22] DE 25.
[23] DE 30.
[24] DE 31.
[25] DE 42.
[26] DE 47.
[27] Administrative DE 209.
[28] Administrative DE 211.
[29] Administrative DE 212.
[30] Administrative DE 224.

September 26, 2018, this Court issued an Order Granting Motion for Sanctions Relating to Debtors' Failure to Appear at 2004 Exams.[31] On September 27, 2018, the Court entered its Order Granting Motion to Compel Production of Documents from Impact Advisor, Inc. and Impact Technology Recruiting, Inc.[32]

On September 11, 2018, Debtors retained new counsel[33] and promptly filed a Motion to Convert Chapter 11 Case to Chapter 7.[34] Defendants' then withdrew their Motion to Convert Chapter 11 Case to Chapter 7,[35] filed a Motion to Dismiss Case,[36] and their counsel withdrew.[37]

On October 11, 2018, a second hearing regarding a discovery dispute was held and Defendants failed to appear.[38] This Court issued an Order Requiring Majestic Financial Inc. to Comply with Subpoena to Permit Inspection and Copying of Documents.[39]

Plaintiff filed an Objection to Defendants' Motion to Dismiss Chapter 11 Case[40] and the case was ultimately reconverted to a Chapter 7 case.[41] On November 6, 2018, this Court issued an Order for Defendants to File Documents.[42] Over the next month, Defendants become nonresponsive, culminating in the Chapter 7 Trustee's counsel, Ryan W. Anderson, filing a Motion to Compel Debtors Compliance with Court Order.[43] This Court granted the Motion to Compel Debtors Compliance with Court Order.[44] Finally, on January 11, 2019, this Court entered an Order Dismissing Debtors' Chapter 7 Case for, among other reasons, Debtors' failure to attend their § 341 meeting.[45]

On August 1, 2019, the Court held a hearing on Plaintiff's Fee Application and determined that Plaintiff would be awarded fees related to specific aspects of Defendants' bankruptcy case

---

[31] Administrative DE 229.
[32] Administrative DE 231.
[33] Administrative DE 216.
[34] Administrative DE 217.
[35] Administrative DE 236.
[36] Administrative DE 237.
[37] Administrative DE 241.
[38] Administrative DE 246.
[39] Administrative DE 250.
[40] Administrative DE 257.
[41] Administrative DE 263.
[42] Administrative DE 264.
[43] Administrative DE 284.
[44] Administrative DE 299.
[45] Administrative DE 303.

based on Defendants' bad faith. The Court ordered Plaintiff to file a categorized statement of the fees and costs sought and gave Defendants until August 22, 2019 to respond. Plaintiff filed his Fee Exhibits[46] and then Defendants filed their Objection.[47] On September 10, 2019, the Court was notified by Plaintiff that no further briefing would be submitted and that no hearing would be requested. The Court then took Plaintiff's Fee Application under advisement.

## II. JURISDICTION

This Court has jurisdiction over the Adversary Proceeding pursuant to 28 U.S.C. § 157(J) and has the "inherent power to sanction vexatious conduct presented before the court."[48]

## III. LEGAL ANALYSIS

Section 105 grants the Court broad powers to implement provisions of the Code and to prevent an abuse of the bankruptcy process.[49] These broad powers include "the inherent power to sanction vexatious conduct presented before the court."[50] Courts need to exercise this inherent power to "punish and deter frivolous arguments."[51] If a party's misconduct rises to the level of bad faith, sanctions are an appropriate remedy.[52] "The only effective way to deter filing and prosecuting bankruptcy cases in bad faith is to impose monetary sanctions against both the debtor and the debtor's counsel who do this."[53] "A court must, of course, exercise caution in invoking its inherent power…"[54]

On August 1, 2019, this Court made specific findings and determined that Defendants acted in bad faith with respect to several aspects of their bankruptcy case. The Court categorized the fees sought by Plaintiff into five buckets: (1) fees and costs incurred in connection with Defendants' chapter 13 eligibility; (2) fees and costs incurred in connection

---

[46] DE 61.
[47] DE 62.
[48] *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 284-85 (9th Cir. 1996).
[49] *Id.* at 284-85.
[50] *Id.* at 284.
[51] *Pacific Harbor Capital*, 210 F.3d 1112, 1124 (9th Cir. 2000).
[52] *Primus Automotive Financial Services v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997).
[53] *In re Siberkraus*, 253 B.R. 890, 902 (9th Cir. 2000).
[54] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991).

with Plaintiff's Adversary Proceedings seeking a denial of discharge; (3) fees and costs incurred in connection with Plaintiff's objection to Defendants' claimed homestead; (4) fees and costs incurred in connection with Defendants' initial refusal to dismiss their case and subsequent objections to conversion; and (5) fees and costs incurred in connection with Plaintiff's efforts to investigate the accuracy of Defendants' disclosures on their schedules and statements and Plaintiff's efforts to discover Defendants' assets.

The Court determined that Defendants did not act in bad faith with respect to the chapter 13 eligibility dispute or in contesting the § 727 denial of discharge adversary proceeding. The Court did determine that Defendants acted in bad faith (1) in claiming and pursuing a homestead exemption in the 11 East Venado Drive, New River, Arizona property; (2) in objecting to Plaintiff's October 2, 2018 attempt to dismiss the case; (3) in failing to disclose multiple sources of income; (4) in pursuing a chapter 13 and chapter 11 plan; and (5) in repeatedly failing to comply with this Court's orders.

Without a doubt, Plaintiff expended significant time and energy contesting Debtors' many twists and turns in this case. This Court determined that Defendants did not dispute that the hourly rates charged by Plaintiff were reasonable. The only issue left to be determined was whether Plaintiff's fees and costs sought were reasonable for the categories in which the Court found the Debtors to have acted in bad faith.

### IV. FEES REQUESTED

This Court determined that Plaintiff would be awarded (1) fees and costs incurred in connection with Plaintiff's objection to Defendants' claimed homestead; (2) fees and costs incurred in connection with Defendants' initial refusal to dismiss their case and subsequent objections to conversion; and (3) fees and costs incurred in connection with Plaintiff's efforts to investigate the accuracy of Defendants' disclosures on their schedules and statements and Plaintiff's efforts to discover Defendants' assets. Plaintiff now seeks $147,788.32 in fees and costs incurred in connection with these three categories. Although Defendants filed Defendants' Objection, for the most part they failed to follow this Court's directive to specifically identify

billing entries to which they objected and instead made a general objection to the fees and costs as being "excessive and improper."[55] Further, Defendants mischaracterize this Court's findings when they argue that the Court established October 2, 2018 as the start date for which fees and costs began to accrue. The October 2, 2018 start date only related to the fourth category (fees and costs incurred in connection with Defendants' initial refusal to dismiss their case and subsequent objections to conversion).

The Court now conducts an independent review of the fees and costs sought by Plaintiff for each of the three permitted categories.

### A. Homestead Objection[56]

Plaintiff seeks an award of $60,033 for fees incurred in connection with the objection to Defendants' claimed homestead exemption. These fees and costs were incurred between January 12, 2018 and August 10, 2018. Defendants fail to object to any specific billing entries in this category but instead generally object to these fees on the basis that they were incurred before October 2, 2018. For reasons stated above, this objection mischaracterizes the Court's findings at the August 1, 2019 hearing and is an insufficient basis for objection. Nevertheless, the Court determines that several entries in this expense category are either excessive and unreasonable or improperly categorized under the Plaintiff's objection to Defendants' homestead exemption.

The Court finds that two entries related to Plaintiff's objection to Defendants' homestead exemption are excessive and unreasonable. First, the billing entry for January 21, 2018 for $1,112.50 for work done on revising Plaintiff's objection to Defendants' homestead exemption is excessive and unreasonable. Similarly, the billing entry for January 26, 2018 for $1,220 for work done reviewing and revising the Plaintiff's objection to Defendants' homestead exemption is excessive and unreasonable. The Court hereby denies Plaintiff's these fees in the aggregate

---

[55] Despite the Court's explicit direction to identify specific entries that Defendants believe to be unreasonable, Defendants only identify four entries and then include the following statement: "There are more items which Defendants believe and assert to be excessive and during the hearing, Defendants shall be inviting the Court to conduct a scrutiny of all the items in the exhibits." The rest of Defendants' Objection repeats allegations of improper misconduct on the part of Plaintiff and his counsel. These issues have already been heard and addressed by this Court.
[56] The Court relies on Exhibit 2 to Plaintiff's Fee Exhibits for the breakdown of fees incurred in connection with the objection to Defendants' claimed homestead exemption.

amount of $2,332.50. Furthermore, several billing entries identified by Plaintiff as falling under the category of objection to Defendants' claimed homestead exemption appear to be related to Plaintiff's motion for stay relief. Although it is conceivable that Plaintiff's objection to Defendants' homestead exemption and Plaintiff's motion for relief from stay related to the same property are indirectly linked for the purposes of work performed on both matters, the Court did not find that Defendants' acted in bad faith with respect to the motion for stay relief. Therefore, the Court is skeptical that any entries related to the latter should be awarded under the Court's inherent authority to sanction vexatious conduct.

The following entries are determined to fall outside the scope of this Court's August 1, 2019 Order: (i) the April 22, 2018 entry for $297 for researching case law regarding when bad faith is considered cause to grant relief from the automatic stay (ii) the April 23, 2018 entry for $1,350 for drafting and revising motion for stay relief; (iii) the April 24, 2018 entry for $623 for revising the motion for stay relief; (iv) the April 25, 2018 entry for $240 related to the motion for stay relief; (v) the April 25, 2018 entry for $89 for reviewing and editing notice of stay relief; (vi) the May 8, 2018 entry for $96 for drafting the notice of preliminary hearing on the motion for stay relief; (vii) the May 8, 2018 entry for $133.50 for reviewing the notice of the preliminary hearing on stay relief; (viii) the May 11, 2018 entry for $216 for reviewing the motion for stay relief and disclosure statement; (ix) the May 14, 2018 entry for $108 for conferring on the reply to the motion for stay relief; (x) the May 16, 2018 entry for $267 for conferring on the case law and applicable standards for stay relief in chapter 11; (xi) the May 16, 2018 entry for $1,107 for researching issues related to the motion for stay relief; (xii) the May 17, 2018 entry for $667.50 for revising the reply in support of the motion for stay relief; (xiii) the May 17, 2018 entry for $675 for on drafting the reply in support of the motion for stay relief; (xiv) the May 17, 2018 entry for $243 for revising a reply in support of the motion for stay relief; (xv) the May 18, 2018 entry for $162 for in preparation of the hearing on the motion for stay relief; (xvi) the May 21, 2018 entry for $594 for preparing and attending the hearing on stay relief; and the August 8, 2018 entry for $216 for drafting an order granting relief from the stay in light of the Court's ruling on debtors' homestead exemption. These stay relief related charges total $7,084.

After taking into account the entries identified as excessive or unreasonable ($2,332.50) and the entries related to the Plaintiff's motion for stay relief ($7,084), the Court finds that Plaintiff shall be awarded $50,616.50[57] for fees incurred in connection with Plaintiff's objection to Defendants' homestead exemption.

### B. Dismissal and Conversion[58]

Plaintiff seeks an award of $15,306 for fees incurred in connection with Defendants' initial refusal to dismiss their case and subsequent objections to conversion. Defendants fail to object to any specific billing entries in this category and instead generally object to these fees on the basis that they were incurred before October 2, 2018. For reasons stated above, this objection mischaracterizes the Court's findings at the August 1, 2019 hearing and is an insufficient basis to object. This Court finds that the entire $15,306 sought by Plaintiff in connection with Defendants' initial refusal to dismiss their case and subsequent objections to conversion is reasonable.[59] The full amount of the $15,306 in fees sought by Plaintiff in this category is hereby awarded in favor of Plaintiff and against Defendants.

### C. Asset Concealment and Inaccurate Disclosures[60]

Plaintiff seeks an award of $57,955 for fees incurred in connection with Plaintiff's efforts to investigate the accuracy of Defendants' disclosures on their schedules and statements and Plaintiff's efforts to discover Defendants' assets. Defendants object to four specific billing entries under this category on the basis that they are clerical or pertain to an administrative matter. Specifically, Defendants point the Court to billing entries for (1) November 29, 2017; (2) November 30, 2017; (3) December 7, 2017; and (4) January 3, 2018. This Court finds that the November 29, 2017 billing entry, the December 7, 2017 billing entry and the January 3, 2018

---

[57] $60,033 - $7,084 - $2,332.50 = $50,616.50.
[58] The Court relies on Exhibit 3 to Plaintiff's Fee Exhibits for the breakdown of fees incurred in connection with the objection to Defendants' claimed homestead exemption.
[59] The Court notes that Plaintiff elected to categorize 4.4 hours of attorney work as "NO CHARGE" related to the billing entries for January 15, 2019 and January 16, 2019.
[60] The Court relies on Exhibit 1 to Plaintiff's Fee Exhibits for the breakdown of fees incurred in connection with the objection to Defendants' claimed homestead exemption.

billing entry all relate to substantive investigations regarding Defendants' assets and income. The November 30, 2017 billing entry, however, is appropriately characterized as clerical or pertaining to an administrative matter. The November 30, 2017 billing entry is described as "Re-lodge and notice order granting motion for 2004 exam and production at Court's request; draft certificate of service regarding order and electronically file same." This billing entry charges $96 for essentially filing and noticing an order previously granted and drafting a certificate of service.

In addition to the November 30, 2017 billing entry for $96, this Court determines that the following billing entries are excessive or unreasonable and therefore will not be awarded: (i) The November 20, 2017 entry for $884.50 for analyzing legal strategies in the Defendants' bankruptcy is excessive; (ii) the January 8, 2018 billing entry for $890 for working on objection to Defendants' chapter 13 plan is excessive considering that five previous billing entries concern the same issue and account for 11.3 hours of billed work; (iii) the January 9, 2018 billing entry for $356 for additional revisions to the objection to Defendants' chapter 13 plan is excessive for the same reason; (iv) the May 17, 2018 billing entry for $667.50 for 0.10[61] hours of work on drafting correspondence to counsel requesting Quickbooks for Majestic and new deposition dates is excessive; (v) the June 4, 2018 billing entry for $712 for reviewing bank statements and additional documents disclosed by Defendants, reviewing a message from Chase Bank and a call following up with Chase Bank regarding a subpoena is excessive; (vi) the June 6, 2018 billing entry for $712 for 0.80[62] hours of work is excessive; (vi) the June 6, 2018 billing entry for $459 for 0.80 hours of work preparing exhibits for depositions is excessive; (vii) the June 7, 2018 billing entry for $534 for 0.60 hours of work on deposition outline is excessive; (viii) the June 8, 2018 billing entry for $356 for 0.40 hours of work on reviewing a 2004 Exam, bank statements and considering their use and strategy in depositions is excessive; (ix) the June 11, 2018 billing entry for $845.50 for 0.80 hours of work on various matters is excessive; (x) the June 22, 2018 billing entry for $3,026 for 3.4 hours of work is excessive and will only be allowed in the amount of $1,600; (xi) the June 27, 2018 billing entry for $1,513 for 0.20[63] hours of work for corresponding with J.

---

[61] The Court notes that this would equate to an hourly rate of $6,675.
[62] The Court notes that this would equate to an hourly rate of $890.
[63] The Court notes that this would equate to an hourly rate of $1,668.75.

Eldridge regarding property owned by Tantri is excessive; (xii) the July 31, 2018 billing entry for $667.50 for 0.40 hours of work on reviewing bank statements and deposit records in response to Sara Mailatyar's subpoena is excessive; (xiii) the September 18, 2018 billing entry for $845.50 for 0.30[64] hours of work on conferring with Plaintiff and "multiple communications with court" about an upcoming hearing is excessive. These excessive charges related to Plaintiff's investigations total $10,868.50.

After taking into account the entry identified as clerical or pertaining to administrative matters and the excessive or unreasonable changes noted above, the Court finds that Plaintiff shall be awarded $46,990.50[65] for fees incurred in connection with his objection to Defendants' homestead exemption.

### D. Costs[66]

Plaintiff seeks an award of $14,494.32 for costs incurred in connection with (1) Plaintiff's objection to Defendants' claimed homestead; (2) Defendants' initial refusal to dismiss their case and subsequent objections to conversion; and (3) Plaintiff's efforts to investigate the accuracy of Defendants' disclosures in their schedules and statements and Plaintiff's efforts to discover Defendants' assets. At the August 1, 2019 hearing, the Court expressed concern over costs incurred by MCA Financial. The Court requested that Plaintiff revisit those specific costs and explore the possibility of seeking qualitative billing from MCA Financial. Plaintiff requests an award of all costs incurred by MCA Financial in this matter because those costs were incurred in connection with Defendants' bad faith pursuit of a chapter 11 plan.

The Court declines to award those fees in their entirety because, although they were incurred in connection with Defendants' initial refusal to dismiss their case and subsequent objections to conversion, the Court finds that incurring costs totaling $3,789.71 after September 20, 2018 was necessary. [67]

---

[64] The Court notes that this would equate to an hourly rate of $2,818.33.
[65] $57,955 - $96 - $10,868.50 = $46,990.50.
[66] The Court relies on Exhibit 4 to Plaintiff's Fee Exhibits for the breakdown of costs incurred by Plaintiff.
[67] The Court notes that MCA Financial charged $592.50 for an "Attempted inspection of Majestic Financial and Wali Mailatyar" and MCA Financial charged another $395 for producing a summary of the attempted inspection. While

11

Case 2:18-ap-00259-DPC    Doc 63    Filed 11/26/19    Entered 11/26/19 10:01:27    Desc
Main Document    Page 11 of 12

For these reasons, the Court finds that Plaintiff shall be awarded $11,692.11[68] for costs incurred in connection with (1) Plaintiff's objection to Defendants' claimed homestead; (2) Defendants' initial refusal to dismiss their case and subsequent objections to conversion; and (3) Plaintiff's efforts to investigate the accuracy of Defendants' disclosures on their schedules and statements and Plaintiff's efforts to discover Defendants' assets.

## V. CONCLUSION

For the reasons stated above, this Court awards $124,605.11 to Plaintiff for fees and costs he incurred in connection with Defendants' bad faith related to the homestead, dismissal/conversion and discovery/disclosure issues referenced above. Defendants pursued these aspects of their litigation with Plaintiff in bad faith and, under § 105(a), this Court awards these amounts of fees and costs as a sanction for Defendants' misconduct.

**IT IS ORDERED** that Defendants pay $124,605.11 to Plaintiff for fees and costs incurred and that such amount accrue interest at the federal rate, from the date of this Order,[69] until paid.

Notice to be sent to the following:

Ahmad Wali Mailatyar
Edyta Kamila Mailatyar
7712 E. Journey Lane
Scottsdale, AZ 85255

Isaac M. Gabriel
Quarles & Brady LLP
Renaissance One
Two N. Central Ave.
Phoenix, AZ 85004

---

the Court finds these costs a bit high, they were caused by the Defendants' failure to cooperate in the discovery and asset evaluation process so Defendants' will not be given a reprieve on these expenses even if they are hearsay.

[68] $14,494.32 - $3,789.71 + 592.50 + 395 = $11,692.11.

[69] See 28 U.S.C. § 1961(a).